# EXHIBIT 1

# IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE

MICHAEL DELAVEGA

Plaintiff,

v.

No.: _____

AMDOCS, INC.

JURY DEMAND

Defendant.

## COMPLAINT

THE PLAINTIFF, Michael DeLaVega, files this Complaint against Defendant Amdocs, Inc. He shows:

## I.
## PRELIMINARY STATEMENT

1. This case is brought under the Tennessee Public Protection Act and the common law of the State of Tennessee.

## II.
## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a former employee of Defendant Amdocs, Inc.

3. Defendant is a Delaware corporation that maintains its principal office/headquarters in Chesterfield, Missouri. A significant portion of the leadership and management of Defendant and its parent and/or affiliated entities resides in Israel and/or is of Israeli nationality and/or decent.

4. Defendant is engaged globally as a provider of software and services for billing, customer relationship management and operations support systems and provides products and

services to major U.S. telecommunications clients including, but not limited to, AT&T and Sprint.

5. At all material times Amdocs actively transacted business in Tennessee including Davidson County and may be served with process by and through its Registered Agent for service in Tennessee – CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

6. This Court has subject matter jurisdiction over Plaintiff's claims which are brought pursuant to the Tennessee Public Protection Act and the common law of the State of Tennessee.

7. Venue and personal jurisdiction are proper in this case because the Defendant does business in Davidson County, Tennessee and a substantial part of the events giving rise to this action occurred in Davidson County.

## III.
## FACTUAL BASES FOR SUIT

8. Defendant began employment with Defendant in or about March 2011.

9. In September 2011, Plaintiff was assigned by Defendant as the on-site Project Manager to the "AT&T Proof of Concept (POC) Project" at AT&T's Nashville, Tennessee call center. The purpose of this project was for Defendant to: (1) assess AT&T's training and support capabilities for its software release updates; (2) evaluate AT&T's desktop customer relationship management products and identify areas of opportunity; (3) test a proposed training and support model; and, (4) measure and report results in the hope of Defendant selling the training and support model /services to AT&T on a large scale, enterprise-wide contract.

10. During a September 30, 2011 conference call concerning the AT&T POC project, Plaintiff was directed by his superior Noam Weiss ("Weiss") (Defendant's Director of Sales

Training and Workforce Performance) to take pictures of proprietary AT&T products, pricing, and operational manuals and information without authorization from or knowledge by AT&T.

11. In response to this directive by Weiss, Plaintiff formed a good faith belief as to the impropriety and illegality of such acts and voiced objections to engaging in such acts to which Weiss sternly directed, "just use the camera on your phone." Notably, at the time he was asked to engage in such improper and illegal acts, Plaintiff was a project manager on behalf of Defendant for Sprint which was a direct competitor of Defendant.

12. On October 26, 2011, Plaintiff was singled out and directed by his superior Doron Filokov ("Filokov") to take pictures of AT&T unionized employees undergoing AT&T-developed training (as well as Amdocs developed Training). Defendant did not have authorization from AT&T nor from the employee's union to take these photos. When Plaintiff protested from engaging in such acts out of good faith concern of impropriety, Filokov directed Plaintiff, "Just don't let them see you taking them." Notably, several of Plaintiff's co-workers, who were all Israeli, Caucasian men (Weiss, Filokov, David Amir and Yoram Shaked), were at the site and could have taken the pictures themselves. But, Plaintiff was singled out to do so because he is African-American and of U.S. nationality.

13. From November 7-16, 2012 Plaintiff was singled out and directed by Weiss over Plaintiff's good faith objections to create and present fake, false, fabricated and intentionally misleading results to AT&T leadership in order to sell Defendant's services and products. Plaintiff's co-workers, who were all Israeli, caucasian men, were not asked to falsify and/or present such fake project results.

14. On several other occasions, improper, unethical and/or illegal conduct relative to Defendants efforts to sell products and services to AT&T was delegated to Plaintiff over

Plaintiff's good faith objections as opposed to the Caucasian, Israeli co-workers of Plaintiff.

15. On Nov 15, 2011, during a significant meeting with AT&T representatives that was held from Nov 15, 2011 – Nov 17, 2011, Plaintiff had a heated confrontation with Weiss wherein Plaintiff specifically protested and complained of the many unethical, improper and illegal activities he was being asked to engage in, and the discriminatory basis in which such instructions/assignments were made. Subsequently, and despite his objections, on November 16, 2011 Plaintiff was singled out and directed by Weiss to present falsified project results to key members of AT&T's leadership team during said meeting.

16. Moreover, prior to and during the entire course of the AT&T POC project, Plaintiff was directed by his superiors, including Arza Sheffey, over Plaintiff's objections to report hours worked on client accounts (including AT&T accounts) that Plaintiff never worked on and/or greatly inflate the number of hours Plaintiff actually worked on other client accounts. Defendant falsely billed such clients to pay for Plaintiff's non-billed work on the AT&T POC project.

17. By way of examples: (1) Plaintiff was directed to claim that that he worked 45 hours on work for Vonage account but actually never worked on the Vonage account; (2) Plaintiff was directed to claim well over 90 hours for work on behalf of Sprint when he actually never worked more than 20 hours on the Sprint account the entire time he was employed with Amdocs; and, (3) Plaintiff was directed to claim 45 hours on the AT&T Retail/Door to Door project when he never worked on this project.

18. Subsequent to the afore-mentioned November 16, 2011 presentation, Weiss directed Plaintiff to make another presentation to AT&T representatives that would necessarily and specifically include the use of falsified information. In response, Plaintiff flatly refused and

unequivocally told Weiss that he would no longer engage in any such improper, unethical and illegal conduct despite implicit threats of termination that Plaintiff had received from Weiss and others.

19. As a direct and specific result of Plaintiff complaining of and refusing to participate in the afore-mentioned improper, unethical and unlawful acts, and his refusal to remain silent regarding the same, Plaintiff was suspended by Defendant on November 30, 2012 for pretextual reasons and subsequently terminated on December 16, 2011.

20. Plaintiff's termination was based exclusively on Plaintiff's complaints, refusal to participate in and refusal to remain silent concerning improper, unethical and unlawful activity that he was directed to engage in by Defendant under implicit threats of termination.

21. As a result of the actions of Defendant, Plaintiff has suffered financial and emotional hardship.

## IV.
## CAUSES OF ACTION

22. The foregoing facts are incorporated.

23. Plaintiff demands a jury.

24. Plaintiff brings the following causes of action against Defendant

    a. Violation of the Tennessee Public Protection Act; and

    b. Common law whistleblower (retaliatory discharge)

25. Plaintiff seeks all compensatory damages, including lost wages, lost earning capacity, emotional distress, pain and suffering, punitive damages, and humiliation and embarrassment. He also seeks his attorney's fees and costs. He also seeks prejudgment and post-judgment interest.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer

this Complaint, that Plaintiff be awarded all monetary and compensatory damages available, any other equitable relief, permanent injunctive relief, punitive damages, attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which they may be entitled in an amount not to exceed Two Million Dollars.

Respectfully submitted this 14th day of December 2012,

GILBERT RUSSELL McWHERTER PLC

_____
MICHAEL L. RUSSELL (20268)
Gilbert Russell McWherter PLC
Gateway Plaza
5409 Maryland Way, Suite 150
Brentwood, Tennessee 37027
Telephone: 615-354-1144
mrussell@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*

## COST BOND

We stand as sureties for costs which may be incurred in this action in an amount not to exceed $1,000.00.

GILBERT RUSSELL McWHERTER PLC

_____
Michael L. Russell